# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **MARK SAFFELL**<br>11820 Edgewater Drive, Apt. 815<br>Lakewood, Ohio 44107<br><br>*Plaintiff*,<br><br>vs.<br><br>**TEKSYSTEMS, INC.**<br>c/o Corporation Service Company<br>50 W. Broad Street, Suite 1330<br>Columbus, Ohio 43215<br><br>AND<br><br>**JASON LANCIOTTI**<br>5541 River Summit Drive<br>North Royalton, Ohio 44133<br><br>*Defendants*. | Case No.<br><br>Judge |
| **COMPLAINT WITH JURY DEMAND** ||

## NATURE OF THE ACTION

1. This is a civil-rights action to redress discriminatory employment actions taken against Plaintiff Mark Saffell by his employer Defendant TEKsystems, Inc. ("TEKsystems").

2. Mr. Saffell has worked as senior account manager for TEKsystems since 2007. Mr. Saffell is 62 years old, and because of his age is an outlier among his peers, nearly all of whom are in their twenties, thirties, and early forties.

3. In 2019, as Mr. Saffell turned 60 years old, his TEKsystems managers made a series of decisions that shifted compensation away from Mr. Saffell to younger employees. Then, days after his 60th birthday, his TEKsystems manager started pressuring Mr. Saffell to move into a less-

desirable position—a move Mr. Saffell ultimately resisted after discovering his manager had misrepresented key aspect of the job.

4. Defendant TEKsystems deprived Mr. Saffell deprived him of his right to equal employment by taking adverse employment actions against based on his age.

## PARTIES

5. Plaintiff Mark Saffell is a resident of Cuyahoga County, Ohio.

6. Defendant TEKsystems, Inc. is a Maryland corporation headquartered in Hanover, Maryland.

7. Defendant Jason Lanciotti is the director of business operations for TEKsystems' Cleveland-area office located in Independence, Ohio. He was (and is) Mr. Saffell's direct supervisor during all times relevant to this complaint.

## JURISDICTION AND VENUE

8. Jurisdiction over federal claims under the Age Discrimination in Employment Act is asserted under 28 U.S.C. §§ 1331 and 1343(a)(4).

9. The Court has jurisdiction over state-law claims under 28 U.S.C. § 1367.

10. The Court has jurisdiction over the parties under 28 U.S.C. § 1391, and venue is proper here because the events at issue took place in this jurisdiction.

## FACTS

### As a TEKsystems account manager, Mark Saffell performed highly and developed considerable business for TEKsystems.

11. Mr. Saffell is a senior account manager at TEKsystems, Inc. His job duties focus on developing business for TEKsystems' IT staffing and services. He has performed this type of work for over 20 years.

12. From 2001 to 2007, Mr. Saffell worked for Computer Horizons Corp. until TEKsystems acquired the company. He has worked for TEKsystems since that 2007 acquisition.

13. As of this complaint, Saffell is 61 years old.

14. Of Mr. Saffell's 13-year tenure with TEKsystems, he's worked ten of those years as an account manager focused on IT staffing. Over that time, he has brought in many large clients, including major retailers and insurance companies. He has also improved and reinvigorated relationships with other clients.

15. Because of his efforts and the relationships he has developed, Mr. Saffell's sales activity has stayed consistently high. He has been one of the top-performing account managers for TEKsystems's office in Cleveland since joining the company in 2007.

**Because of age differences, Saffell's managers and coworkers treat Saffell differently than other account managers.**

16. As Mr. Saffell approached his sixties, however, he became increasingly ostracized within TEKsystems's Cleveland-area office.

17. Most of his colleagues—including his managers—were in their twenties, thirties, and early forties.

18. In and around 2016 and 2017, Mr. Saffell's reported directly to Kieko Berg. Ms. Berg admitted to having issues with Saffell because he reminded Berg of her father. While Berg interacted regularly with TEKsystems's younger account managers, she avoided Saffell. When she did sparingly interact with Saffell, it was only to communicate negative things to him—even though he performed well based on all the production metrics for Saffell's position.

19. In December 2017, Jason Lanciotti replaced Ms. Berg as Mr. Saffell's manager.

20. Mr. Saffell hoped for better treatment under Lanciotti, but those hopes were soon dashed.

### TEKsystems managers shift client accounts (and related commissions) away from Saffell toward younger employees.

21. Like Ms. Berg, Mr. Lanciotti similarly ignored Mr. Saffell.

22. Indicating his preference for younger employees, Mr. Lanciotti once told a colleague, "I only give my time to people I think can be developed."

23. As Mr. Saffell's manager, Mr. Lanciotti picked away at accounts that Saffell had developed, transitioning the accounts to younger employee. Notably, Lanciotti moved Saffell off of a major account on which he had worked for six years.

24. As Mr. Saffell opened new accounts, they were reassigned to or split with younger employees.

25. A significant component of Mr. Saffell's pay as a senior account manager is performance-based.

26. The performance-based pay is composed of standard commissions based upon his "spread" (meaning the gross profit from his sales) and bonuses for meeting quarterly and annual commission thresholds—referred to as "contests."

27. By shifting of accounts away from Mr. Saffell, TEKsystems managers negatively affected his ability to earn commissions. That in turn hampered him from reaching the contest thresholds.

### TEKsystems managers further split commissions away from Saffell, forcing Saffell to evenly split commissions on accounts that he primarily handled with a younger employee.

28. Despite Mr. Lanciotti chipping away at his accounts, Mr. Saffell met his quarterly contest thresholds up through the second quarter of 2019.

29. At the Cleveland-area office, TEKsystems accounts were assigned both an account manager and an account lead.

30. Through the second quarter of 2019, TEKsystems paid account *mangers* (like Mr. Saffell) a commission equal to 75% of the spread on an account. Meanwhile, TEKsystems also paid account *leads* a commission equaling 50% of the spread on an account.

31. But during 2019, TEKsystems implemented a new system that reduced the total commission paid on each account. While TEKsystems had previously paid a total combined commission equal to the 125% of an account's spread (75% to the account manager + 50% to the account lead), TEKsystems reduced the total combined commission to equal 100% of an account's spread.

32. A TEKsystems policy established that the commission would be divided 75% – 25% between the account manager and account lead, respectively. Under this allocation, Mr. Saffell would have continued to receive a commission equal to 75% of the spread on his accounts.

33. As an exception, TEKsystems's policy stated that in "specific circumstances"—approved by managers—commissions could be split evenly (50% – 50%) between the account manager and account lead on an account.

34. Despite the policy that called for Mr. Saffell, as the account manager, to ordinarily be credited for 75%, Mr. Lanciotti reduced Saffell's commission percentage to 50% *across nearly all of his accounts*.

35. This change occurred at the beginning of the third quarter of 2019. To Mr. Saffell's knowledge, no other account managers had their commission percentage similarly cut.

36. The reduction in Mr. Saffell's commission percentage cut Saffell's commissions by a third.

37. The reduction in Mr. Saffell's commissions in turn hampered and jeopardized his ability to meet his quarterly and annual contest targets.

38. The mid-2019 reduction of Mr. Saffell's commission percentage proved to be the difference in Saffell's contest results. He fell short of the contest thresholds in the third and fourth quarter of 2019.

39. The reduction of Mr. Saffell's commission percentage also caused Saffell to miss the full-year annual contest.

40. Had Mr. Saffell's commission percentages not been reduced from 75% to 50%, he would have qualified for the contest—and thus earned significantly more pay.

41. When Saffell missed qualifying for the 2019 annual contest, it was the first time he missed an annual contest since 2011. He had qualified for each annual contest from 2012 to 2018.

**As Mr. Saffell turns 60 years old, TEKsystems mangers try to pressure him to move into reduced role in the recruiting division.**

42. Because he was 15+ years older than the next oldest person in his staffing division of roughly 40 employees, Mr. Saffell typically kept mum about his age. He shared with only a few coworkers that, on October 3, 2019, he was turning 60 years old.

43. On his birthday, Mr. Saffell's coworkers gathered at a nearby restaurant and held a 60th birthday celebration for Saffell.

44. About a week after the 60th birthday party, Mr. Lanciotti set up a meeting with Mr. Saffell.

45. In that mid-October meeting, Mr. Lanciotti told Mr. Saffell that he planned to move him out from sales to recruiting (a less desirable job).

46. Most TEKsystems employees *start* in recruiting, hoping to develop a career path in recruiting or work their ways into sales.

47. While Mr. Saffell as an account manager had been reporting directly to Mr. Lanciotti, in the recruiting job he would report to a different manager (Cara Bilderbeck) who then reported to Lanciotti. (Lanciotti initially misled Saffell by saying that he would still report directly to Lanciotti, before later revealing there would be an intervening manager).

48. Mr. Saffell never requested to be reassigned, and he didn't desire to be reassigned. He had extensive experience tied to his sales role as account manager, in which he had excelled for years.

49. During this mid-October meeting, Mr. Lanciotti tried to entice Mr. Saffell into the new job by promising that he would help Saffell qualify for the 2019 year-end contest—which would have mitigated some of Saffell's financial losses from his reduced commission percentage.

50. Mr. Saffell was interested in qualifying for the 2019 contest because it would mitigate much of the financial loss from his reduced commissions. Still, he was leery of moving to the recruiting job.

51. Mr. Lanciotti continued to try to coax Mr. Saffell into the recruiting position. The two discussed the topic during a meeting on or about December 2, 2019. But during that meeting, Lanciotti backtracked on promises and assurances he had provided Saffell about the recruiting position.

52. Compared to how Mr. Lanciotti had initially described the job, Lanciotti was informing Mr. Saffell that he would get lower compensation, a less desirable office location, less job autonomy, and more remedial training. Lanciotti also informed Saffell that he would report to a different manager, who would in turn report to Lanciotti.

53. Mr. Saffell left that meeting discouraged about the recruiting job and his future standing at TEKsystems.

54. In that meeting, it became clear to Mr. Saffell that moving to the recruiting job would not be a lateral move. It would be a demotion.

55. Shortly after this meeting, Mr. Lanciotti came alone to Mr. Saffell's office and closed the door. Appearing distressed, Lanciotti told Saffell they needed to have a frank conversation. He relayed that he heard that Saffell was concerned about age discrimination. Lanciotti pressed Saffell on whether he was concerned and whether he trusted Lanciotti.

56. Uncomfortable with this confrontation, Mr. Saffell responded vaguely: he said he had not filed a formal discrimination complaint and told Lanciotti that he trusted him.

57. During this closed-door meeting, Mr. Lanciotti for the first time told Mr. Saffell he had the option to stay in his account-manager job—although Lanciotti recognized Saffell's current accounts were, according to Lanciotti, "shitty." As Saffell had done several times before, he raised the issue with his reduced commission percentages, but he again got no traction with Lanciotti about addressing that issue.

### After Saffell reports age discrimination to TEKsystems' human-resources department, TEKsystems managers fail to take remedial action.

58. On or about December 9, 2019, Mr. Saffell spoke to a human-resource representative, Michael Schaar, about the age discrimination he was facing, and the retaliation he feared. Saffell followed up with an email reflecting his concerns.

59. Mr. Saffell reported Mr. Lanciotti's closed-door questioning, the attempt to move Saffell from sales to recruiting, and the negative effects of having his accounts and commissions pulled away.

60. Later that day, Mr. Saffell notified Mr. Lanciotti that he wanted to stay in sales as an account manager.

61. In early January 2020, Mr. Saffell emailed and discussed the 2019 year-end contest with Mr. Lanciotti—who had earlier claimed to be able to help Saffell qualify, if he was close.

62. Yet Mr. Lanciotti had since disclaimed to having much, if any, sway over the contest determinations—although he still promised to *try* to get the regional vice president, Dustin Hunt, to approve it for Mr. Saffell.

63. As of early January 2020, Mr. Lanciotti reported that it was still an open issue.

64. During Mr. Saffell's performance review in late January 2020, however, Mr. Lanciotti told Saffell he would not be approved for the 2019 contest.

65. Because Mr. Saffell did not qualify for the 2019 contest (due to the reduction in his commissions) and was not otherwise approved for the contest, Mr. Saffell incurred a significant loss of income.

### Saffell continues to perform highly as a TEKsystems account manager.

66. Despite the actions against him—including the commission-percentage reduction, the false promise to get him the 2019 contest, and the attempt to push him out of sales—Mr. Saffell has continued to demonstrate his sales chops.

67. In 2020, Saffell led his TEKsystems office in sales activity (i.e. meetings). He also has been ranked highly in sales activity among all Ohio TEKsystems offices.

68. The decisions by Mr. Lanciotti and other TEKsystems managers to split accounts away from Mr. Saffell unjustifiably reduced Mr. Saffell's compensation to benefit younger TEKsystems employees.

69. The decisions by Mr. Lanciotti and other TEKsystems managers to reduce Mr. Saffell's commission percentages unjustifiably reduced Mr. Saffell's compensation to benefit a younger TEKsystems employee.

70. Mr. Lanciotti's attempt to push Saffell out of sales was driven by TEKsystems's corporate culture and management philosophy that values youth purely for its own sake—to the detriment of older employees.

### CLAIM 1
### AGE DISCRIMINATION UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA), 29 U.S.C. § 626
### (AGAINST ALL DEFENDANTS)

71. Plaintiff incorporates all previous allegations.

72. Under 29 U.S.C. § 623(a)(1), it is unlawful for an employer to discriminate against any employee "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."

73. Under 29 U.S.C. § 626, a person aggrieved by a violation of 29 U.S.C. § 623 may bring a civil action for damages, injunctive relief, attorneys' fees, liquidated damages, and any other appropriate relief.

74. On March 30, 2020, Mr. Saffell filed a charge of discrimination with the Equal Employment Opportunity Commission. He received a right-to-sue letter from the Commission on April 23, 2021.

75. Defendants intentionally and maliciously discriminated against Mr. Saffell by taking adverse employment against him based on his age, including:

   a. assigning accounts (and the associated commissions) away from Mr. Saffell to younger employees; and

   b. reducing Saffell's commission percentages on most of his account (which benefitted the account lead on those accounts, who is about 16 years younger than him).

76. As Defendants took these actions, Mr. Lanciotti pressured Mr. Saffell to move out of his account-manager position to a less desirable job in recruiting. In effect, Lanciotti wanted Saffell to agree to a demotion.

77. To induce Mr. Saffell to move into the recruiting position, Mr. Lanciotti initially misrepresented the terms and conditions of the job to make it appear more desirable than it was.

78. Defendant TEKsystems, Inc. is vicariously liable for Defendant Lanciotti's and its other employees' acts toward Mr. Saffell's.

79. As a direct and proximate result of Defendants' discriminatory actions, Saffell has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, pain and suffering; emotional distress; inconvenience; the loss of salary,

commissions, and benefits; and adverse changes to other terms, privileges, and conditions of employment.

80. Mr. Saffell is also entitled to punitive damages, liquidated damages, and attorneys' fees based on the Defendants' conduct.

81. Defendants' acts were wanton, willful, egregious, and malicious, and are worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### CLAIM 2
### RETALIATION UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA), 29 U.S.C. § 626
### (AGAINST ALL DEFENDANTS)

82. Plaintiff incorporates all previous allegations.

83. Under 29 U.S.C. § 623(d), it is unlawful for an employer to discriminate against any employee because the employee has opposed any practice made unlawful by the Age Discrimination in Employment Act.

84. Under 29 U.S.C. § 626, a person aggrieved by a violation of 29 U.S.C. § 623 may bring a civil action for damages, injunctive relief, attorneys' fees, liquidated damages, and any other appropriate relief.

85. Mr. Saffell opposed TEKsystems's practices that discriminated based on age, including by reporting those practices to a human-resource representative, Michael Schaar, on or about December 9, 2019.

86. Defendants intentionally and maliciously retaliated against Mr. Saffell by taking adverse employment against him because he reported age discrimination at TEKsystems, including Mr. Lanciotti not following through on his promise to help Mr. Saffell qualify for 2019 annual contest.

87. Defendant TEKsystems, Inc. is vicariously liable for Defendant Lanciotti's and its other employees' acts toward Mr. Saffell.

88. As a direct and proximate result of Defendants' actions, Saffell has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, pain and suffering; emotional distress; inconvenience; the loss of salary, commissions, and benefits; and adverse changes to other terms, privileges, and conditions of employment.

89. Mr. Saffell is also entitled to punitive damages, liquidated damages, and attorneys' fees based on the Defendants' conduct.

90. Defendants' acts were wanton, willful, egregious, and malicious, and are worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### CLAIM 3
### AGE DISCRIMINATION UNDER OHIO REV. CODE § 4112.02(A)
### (AGAINST DEFENDANT TEKSYSTEMS, INC.)

91. Plaintiff incorporates all previous allegations.

92. Under Ohio Rev. Code § 4112.02(A), it is an unlawful employment practice for an employer to discriminate in any manner against an employee because of his age.

93. Under Ohio Rev. Code § 4112.052(A), a person aggrieved by an unlawful employment practice under Ohio Rev. Code § 4112.02(A) may bring a civil action in a court for damages, injunctive relief, attorneys' fees, and any other appropriate relief.

94. Defendants intentionally and maliciously discriminated against Mr. Saffell by taking adverse employment against him based on his age, including:

    a. assigning accounts (and the associated commissions) away from Mr. Saffell to younger employees; and

   b. reducing Saffell's commission percentages on most of his account (which benefitted the account lead on those accounts, who is about 16 years younger than him).

95. As Defendants took these actions, Mr. Lanciotti pressured Mr. Saffell to move out of his account-manager position to a less desirable job in recruiting. In effect, Lanciotti wanted Saffell to agree to a demotion.

96. To induce Mr. Saffell to move into the recruiting position, Mr. Lanciotti initially misrepresented the terms and conditions of the job to make it appear more desirable than it was.

97. Defendant TEKsystems, Inc. is vicariously liable for Defendant Lanciotti's and its other employees' acts toward Mr. Saffell's.

98. As a direct and proximate result of Defendants' discriminatory actions, Saffell has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, pain and suffering; emotional distress; inconvenience; the loss of salary, commissions, and benefits; and adverse changes to other terms, privileges, and conditions of employment.

99. Mr. Saffell is entitled in injunctive relief to address the ongoing effect of TEKsystems's discrimination against him, including designating him as having met his 10th annual contest for purposes of determining Mr. Saffell's compensation.

100. Mr. Saffell is also entitled to punitive damages and attorneys' fees based on the Defendants' conduct.

101. Defendants' acts were wanton, willful, egregious, and malicious, and are worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

## CLAIM 4
### RETALIATION UNDER OHIO REV. CODE § 4112.02(I)
### (AGAINST DEFENDANT TEKSYSTEMS, INC.)

102. Plaintiff incorporates all previous allegations.

103. Under Ohio Rev. Code § 4112.02(I), it is an unlawful employment practice for an employer to discriminate in any manner against an employee because the employee has opposed any practice made unlawful by Ohio Rev. Code § 4112.02(A).

104. Under Ohio Rev. Code § 4112.052(A), a person aggrieved by an unlawful employment practice under Ohio Rev. Code § 4112.02(I) may bring a civil action in a court for damages, injunctive relief, attorneys' fees, and any other appropriate relief.

105. Mr. Saffell opposed TEKsystems's practices that discriminated based on age, including by reporting those practices to a human-resource representative, Michael Schaar, on or about December 9, 2019.

106. Defendants intentionally and maliciously retaliated against Mr. Saffell by taking adverse employment against him because he reported age discrimination at TEKsystems, including Mr. Lanciotti not following through on his promise to help Mr. Saffell qualify for 2019 annual contest.

107. Defendant TEKsystems, Inc. is vicariously liable for Defendant Lanciotti's and its other employees' acts toward Mr. Saffell.

108. As a direct and proximate result of Defendants' discriminatory actions, Saffell has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, pain and suffering; emotional distress; inconvenience; the loss of salary, commissions, and benefits; and adverse changes to other terms, privileges, and conditions of employment.

109. Mr. Saffell is entitled in injunctive relief to address the ongoing effect of TEKsystems's discrimination against him, including designating him as having met his 10th annual contest for purposes of determining Mr. Saffell's compensation.

110. Mr. Saffell is also entitled to punitive damages and attorneys' fees based on the Defendants' conduct.

111. Defendants' acts were wanton, willful, egregious, and malicious, and are worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

CLAIM 5
AIDING AND ABETTING AGE DISCRIMINATION
UNDER OHIO REV. CODE §§ 4112.02(J)
(AGAINST DEFENDANT LANCIOTTI)

112. Plaintiff incorporates all previous allegations.

113. Under Ohio Rev. Code § 4112.02(J), it is an unlawful employment practice for any person to aid, abet, incite, compel, or coerce the doing of any unlawful discriminatory practice.

114. Under Ohio Rev. Code § 4112.052(A), any person who violates Ohio Rev. Code § 4112.02(J) in connection with employment is subject to a civil action for damages, injunctive relief, and any other appropriate relief.

115. Defendant Lanciotti aided, abetted, incited, compelled, or coerced the unlawful discriminatory practices against Mr. Saffell alleged above.

116. As a direct and proximate result of Mr. Lanciotti's actions, Mr. Saffell has suffered and will continue to suffer economic and non-economic damages for which Lanciotti is liable, including, but not limited to, pain and suffering, emotional distress, inconvenience, the loss of salary, wages and benefits, and other terms, privileges, and conditions of employment.

117. Mr. Saffell is entitled to punitive damages and attorneys' fees based on the Defendants' conduct.

118. Defendant Lanciotti's acts were wanton, willful, egregious, and malicious, and are worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

**PRAYER FOR RELIEF**

For the reasons stated above, Plaintiff respectfully requests the following relief from the Court:

A. Declare that Defendants' acts and conduct constitute violations of federal and state law;

B. Enter judgment in Mark Saffell's favor on all claims for relief;

C. Award Saffell full compensatory damages, economic and non-economic, including, but not limited to, damages for back pay, front pay, pain and suffering, mental anguish, emotional distress, humiliation, and inconvenience that he has suffered and is reasonably certain to suffer in the future;

D. Award Saffell punitive damages as appropriate for all intentional and malicious violations of federal and state law and constitutional rights;

E. Award Saffell liquidated damages as appropriate under the Age Discrimination in Employment Act;

F. Award pre-judgment and post-judgment interest at the highest lawful rate;

G. Award Saffell his reasonable attorneys' fees (including expert fees) and all other costs of this suit;

H. Award all other relief in law or equity to which Saffell is entitled and that the Court deems equitable, just, or proper.

## JURY DEMAND

Plaintiff Mark Saffell demands a trial by jury on all issues within this complaint.

            Respectfully submitted,

            THE CHANDRA LAW FIRM LLC

            */s/ Patrick Haney*
            Subodh Chandra (OH 0069233)
            Patrick Haney (OH 0092333)
            The Chandra Law Building
            1265 W. 6th Street, Suite 400
            Cleveland, Ohio 44113-1326
            216.578.1700 Phone
            216.578.1800 Fax
            Subodh.Chandra@ChandraLaw.com
            Patrick.Haney@ChandraLaw.com

            *Attorneys for Plaintiff Mark Saffell*